THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAUREEN LAGRONE, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED CALL CENTER TECHNOLOGIES, LLC, and GE CAPITAL RETAIL BANK,<br><br>Defendants. | Case No. 2:13-CV-02136-JLR<br><br>SUPPLEMENTAL DECLARATION OF MARC KELLER |

I, Marc Keller, hereby certify and declare as follows:

1. I am the Chief Compliance Officer for Advanced Call Center Technologies, LLC ("ACCT"). I am over the age of eighteen (18) and am otherwise competent to testify. I make this declaration based on personal knowledge, as well as my review of ACCT's records, kept in the ordinary course of business.

2. ACCT collects debts on behalf of GE Capital Retail Bank ("GE"). On November 24, 2012, GE assigned Plaintiff Maureen Lagrone's JC Penney credit card account to ACCT for purposes of collection. GE does not execute individual assignments for each contract or account that is assigned from GE to ACCT. Upon assignment, an account's information appears via a proprietary GE computer program. ACCT accesses the program

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
U.S. Bank Centre
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

and the requisite information, and begins the collection process. The relationship between the parties is laid out in part by a Statement of Work.

3. Attached as **Exhibit A** is a true and correct copy of the Statement of Work that governed at the time Plaintiff's account was assigned to ACCT.

4. In its role as collection agent for GE, ACCT has the authority to negotiate on behalf of GE and bind GE to settlements with consumers, within specific parameters laid out by GE. Attached as **Exhibit B** is a true and correct copy of the Settlement Guidelines set out by GE.

*I declare under penalty of perjury under the laws of the State of Washington that the foregoing statements are true and correct.*

Dated this 15th day of September, 2014, at Camarillo California

By: [signature]
Marc Keller

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
U.S. Bank Centre
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206.622.1711

**EXHIBIT-A**

**SOW NO. 1**
**AGENCY: PRE-CHARGEOFF**
**RETAIL CONSUMER FINANCE**
**ADVANCED CALL CENTER TECHNOLOGIES**

This Statement of Work ("SOW") is made as of October 1, 2010 between GE MONEY BANK acting through its Retail Consumer Finance division ("Company") and Advanced Call Center Technologies, LLC, a Georgia limited liability company ("Service Provider") pursuant to that Master Collection Services Agreement dated October 1, 2010 between the parties (the "Agreement"). Any capitalized terms not defined in this SOW will have the meanings given to them in the Agreement.

Pursuant to the terms of the Agreement, and for good and valuable consideration, the adequacy and receipt of which are hereby acknowledged by the parties hereto, the parties agree as follows:

**Section I – GENERAL TERMS:**

1.1 APPLICABILITY OF AGREEMENT. This SOW is subject to all of the terms of the Agreement. This SOW shall replace and supersede any prior SOW with respect to the type of Services provided for the Business Component identified above. For sake of clarity, two separate divisions of General Electric Capital Corporation, or an Affiliate of General Electric Capital Corporation, may be considered separate Business Components, and each Business Component may have its own SOW covering the same type of Services.

1.2 TERM OF SOW. The term of this SOW shall commence on October 1, 2010 and shall remain in effect unless terminated earlier pursuant to the terms of this SOW or the Agreement. This SOW may be terminated by either party upon sixty (60) days prior written notice to the other party, but such termination shall in no way affect the obligations of Service Provider or Company with respect to Accounts placed with Service Provider prior to termination, which obligations shall survive termination.

1.3 TYPE OF SERVICES. This SOW covers Placed Accounts that are Delinquent Accounts for Services provided in the United States only. Service Provider will provide the Services on a third party basis (under the name of Service Provider).

1.4 SOW CONTACT. Listed below is the name and address of a Primary Contact for each Company and Service Provider, for purposes of any Notices pursuant to the Agreement or this SOW:

**Company SOW Contact**
GE Capital - Retail Consumer Finance
Attn: Carlton Benton
4500 Munson Street
Canton, OH 44118-3607

**Service Provider Contact**
Advanced Call Center Technologies, LLC
Attn: Russ Hughes or Hunter Croft
1235 Westlakes Drive, Suite 160 / Berwyn, PA 19312
Phone: 904-608-8435 or 610-695-1669
rhughes@acttoday.com or hcroft@acttoday.com

1.5 NON-EXCLUSIVE RELATIONSHIP; NO PLACEMENT COMMITMENT. Service Provider acknowledges that no promises, representations, or warranties whatsoever have been made as to the number of Accounts that may be placed with Service Provider for collection, or that Company will use Service Provider exclusively for collection services. Service Provider agrees to accept Delinquent Accounts and Written Off Accounts from Company for collection from time to time only as requested by Company. Service Provider represents and warrants that it has not incurred, and does not intend to incur, any expenses for additional personnel, facilities, or equipment in reliance upon or in anticipation of receiving Accounts from Company and agrees that Company shall not be obligated for any expense incurred by Service Provider's employees or expenditures made by Service Provider for additional facilities or equipment.

1.6 DEFINITIONS. As used in this SOW, the following terms shall have the respective meanings set forth below:

(a) "Account" means any right of Company, directly or indirectly, to payment for goods sold or leased or for services rendered, and also includes without limitation, instruments and chattel paper, all as defined in the UCC, commercial line agreements, commercial revolving and charge account agreements, consumer revolving and charge account agreements, consumer loans, credit card agreements and sales memos and invoices relating thereto, and other choses in action.

(b) "Account Debtor" means any person who is or may become obligated under, with respect to, or on account of, an Account.

(c) "Authorized Collection Period" means the period commencing on the date an Account is placed with Service Provider and ending on the earlier of (i) the date the Account becomes a Bankruptcy Account; (ii) for Delinquent Accounts, the date the Account becomes a Written Off Account; (iii) the Recall Period specified in Company's Welcome Packet or as otherwise specified to Service Provider; or (iv) the date that Company otherwise recalls the Account.

(d) "Bankruptcy Account" means an Account as to which one or more of the Account Debtors obligated thereunder have filed petitions under Chapters 7, 11, 12, or 13 of the Bankruptcy Code.

(e) "Bankruptcy Code" means Title 11 of the United States Code, as now constituted or as hereafter amended, or any successor law.

(f) "Court Costs" means only actual filing fees and fees for process services as evidenced by appropriate receipt or documentation.

(g) "Delinquent Account" means any Account as to which the Account Debtors obligated thereunder have failed to make the required payments on a timely basis, but which Account is not a Bankruptcy Account or a Written Off Account.

(h) "Gross Proceeds" means, with respect to any Account, all items of payment including, without limitation, cash or its equivalent, and proceeds from the surrender, repossession or replevin of merchandise, paid or received in respect of such Account.

(i) "High Risk Defect" means (i) any defect classified as "high" in Company's Collection Operating Instruction No. C24.0, as amended from time to time; (ii) any failure to comply with applicable law; (iii) any failure to correctly document Account records or other information provided to Company; (iv) any fraud committed in connection with the Servicing of any Account; (v) each failure to meet an SLA requirement imposed in accordance with Section 3.1; and (vi) any other type or class of defects identified by Company in writing (which may be made by email).

(j) "Person" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, or department therein).

(k) "Placed Account" means an Account that has been placed with Service Provider by Company for purposes of collection.

(l) "Placement Segment" means Company's classification of an Account.

(m) "Recalled Account" has the meaning assigned to such term in Section 2.2 of this SOW.

(n) "Written Off Account" means any Account that has been charged off (under the charge off policy of Company in effect), but which Account is not a Bankruptcy Account.

**Section II – SCOPE OF SERVICES PROVIDED:**

Listed below are descriptions and/or specifications of the services to be performed under this SOW.

2.1 SERVICES. From time to time, in its sole discretion, Company may place Accounts with Service Provider for collection Services. Service Provider will perform the Services in accordance with the highest standards in the industry and the Requirements and will comply with all applicable laws, including, without limitation, statutes, regulations, and regulatory guidance applicable to the collection of debts and fair lending.

2.2 RECALLS. Notwithstanding any provision herein to the contrary or any applicable law, Company shall have the absolute right to recall any Placed Account at any time, for any reason, in its sole discretion, with or without cause. Each Account so recalled shall be a "Recalled Account." Any Placed Account for which no payment has been received by either Service Provider or Company for the Authorized Collection Period shall be (i) automatically closed, (ii) deemed a Recalled Account as of the last day of the Authorized Collection Period and (iii) promptly returned by Service Provider to Company. Company, in its sole discretion, may place Recalled Accounts with any other Person. Service Provider shall not be entitled to any Fee or other compensation in respect of any payment received by Company, Service Provider or any other Person in respect of a Recalled Account on or after the date that such Account constitutes a Recalled Account. If a Recalled Account is in litigation at the time that it is recalled (or deemed recalled), Service Provider shall deliver, or cause to be delivered, to Company, at the time of recall, a substitution of attorney signed in blank, for such action.

2.3 SETTLEMENTS. Service Provider is authorized to make a cash settlement on any Placed Account for a percentage of the face amount owed regarding such Placed Account that is equal to or greater than the percentage set forth for such Placement Segment for such Placed Account as communicated to Service Provider in Company's reference manual, commonly referred to as Genius (unless such percentages are updated by Company in its Welcome Packet or in other written instructions provided to Service Provider), provided that such settlement is paid according to written requirements provided by Company. All other settlements and settlement amounts and terms must receive prior written approval of the Company, except if such settlement is made in court and is approved in person or by the telephone, by or with an authorized representative of the Company. To the extent that Service Provider settles for an amount that does not meet Company's minimum requirements, or waives fees without authorization, Service Provider will be liable for such amounts forgiven or waived outside of Company's guidelines.

2.4 COMPENSATION AND REMITTANCE

    2.4.1 FEES. Service Provider's sole compensation in respect of any Placed Account placed shall be the amount specified on Attachment A.

    2.4.2 RESERVED.

    2.4.3 PRIOR UNRECORDED CREDIT. If Company ascertains that the amount of any Placed Account should be reduced because of prior unrecorded credits (i.e., payments, repossessions, repurchases, etc.), Service Provider shall not be entitled to any Fee or other compensation on or in respect of the amount of such prior unrecorded credit.

2.5 BANKRUPTCY ACCOUNTS; DECEASED ACCOUNT DEBTORS. In the event that (a) any proceeding is filed under the Bankruptcy Code by or against any Account Debtor after the placement of the Account, (b) any Bankruptcy Account or any Account in respect of which Company or Service Provider has received notice that the Account Debtor is deceased inadvertently is placed with Service Provider or (c) the Account Debtor obligated in respect of an Account placed with Service Provider dies, upon receipt by Company or Service Provider of notice of such filing or death or upon the determination by Company or Service Provider that a Bankruptcy Account or Account in respect of which the Account Debtor is deceased inadvertently has been placed with Service Provider, unless otherwise directed in writing by Company, Service Provider promptly shall return such Account to Company, clearly notating for Company that the Account is a Bankruptcy Account or that the Account Debtor obligated in respect of such Account is deceased (as appropriate). Service Provider shall also notate the case number, attorney and attorney's telephone number and such other information as Company may require. Service Provider shall not be entitled to any Commission in respect of the Accounts described in this Section 2.5.

2.6 LEGAL PROCEEDINGS. From and after the date hereof, Service Provider shall not refer any Account placed with it by Company to an attorney or initiate any legal proceeding against an Account Debtor.

2.6 REPORTS. Service Provider shall regularly and at such time intervals as Company may designate, and in any event within five (5) days after any request therefore, report to Company the status of any or all Accounts placed with Service Provider. All such reports shall be satisfactory to Company in a form and substance with respect to each Account placed with Service Provider. Service Provider shall provide Company with such other information regarding the status of each Account placed with Service Provider as Company reasonably may request. At a minimum, Service Provider will provide a monthly report by the time period, and containing the information, specified in templates provided to Service Provider by Company, as modified by Company from time to time.

Section III – **SERVICE LEVEL AGREEMENT (SLAs)**

3.1 Service Provider will perform the Services in accordance with the Service Level Agreement (SLAs) included in Company's Welcome Packet and other written instructions provided to Service Provider by Company, as modified by Company from time to time.

**Executed by GE MONEY BANK:**

Authorized Signature: [signature]

Name: Glenn P. Marino

Title: Executive Vice President

Date: 12-15-10

**Executed by Service Provider:**

Authorized Signature: [signature]

Name: Joseph Lebbo

Title: President & CEO

Date: 12/20/10

ATTACHMENT A
to
SOW No. 1

## SERVICE PROVIDER'S FEES FOR SERVICES

Service Provider's Fee to Service Delinquent Accounts shall be on an FTE basis. Prior to each calendar month, Company will instruct Service Provider on the level of FTE for the month; provided that if Service Provider breaches the Agreement, Company may reduce the FTE level immediately (and any compensation due will be pro-rated based on the percent of the month that Services were actually provided). Except as otherwise provided in Section 2.4 of the SOW and Section A.I.b. and A.I.c below, Service Provider's monthly Fee for Delinquent Accounts shall consist of two components: (i) base compensation per FTE ("Base Compensation"); and (ii) performance compensation per FTE based on CE Compensation and DMM Rank Compensation (collectively, "Performance Compensation").

*I. Base Compensation Per FTE*

a. Service Provider shall be paid an amount equal to (i) the product of the applicable rate per FTE from the chart below, multiplied by (2) the FTE headcount for such calendar month. **At Company's discretion, and upon notice to Service Provider, Company may aggregate FTE headcount across all Business Components for pre-chargeoff services that are compensated on an FTE-basis.**

| Number of FTE in the Applicable Calendar Month | Base Compensation per FTE |
|---|---|
| 1-49 | $3,600 |
| 50-99 | $3,550 |
| 100-199 | $3,525 |
| 200+ | $3,500 |

b. In the event that any month during the term is less than a full calendar month, the amounts owed under this Attachment shall be pro-rated by multiplying the dollar amount in the formulation by a fraction the numerator of which is the number of days in the month during which Service Provider was performing services and the denominator of which was the number of days in such month. In addition, the parties acknowledge that an FTE is defined as 2080 production hours (as defined by Company) per calendar year. Service Provider acknowledges that Company will use its reasonable discretion to allocate the amount of production hours to each calendar month. To the extent that a Service Provider employee assigned to perform the Services works less than the hours allocated by Company to a calendar month, the rate specified above will be pro-rated on a straight-line basis.

c. During any calendar month, Service Provider's Performance Compensation, and all other contest monies, will be reduced by the number of equivalent FTE that result in a High Risk Defect (**e.g., for each High Risk Defect, Performance Compensation will be reduced by an FTE-worth of payments even if one person causes multiple High Risk Defects**); provided that if the High Risk Defect involves fraud or the failure to comply with applicable law, Service Provider will not have earned any Base Compensation for the equivalent FTE that resulted in a High Risk Defect. For sake of clarity, if the number of High Risk Defects in a calendar month exceed the equivalent FTE for that calendar month, Company may apply the deduction in compensation to any other calendar month.

*II. Performance Compensation*

Service Provider may earn CE Compensation and DMM Rank Compensation (both defined below) for each calendar month during the term of this SOW based on Service Provider's actual performance during that month (or part thereof pro rated as set for in Section A.I.b. above). Company may amend Performance Compensation (CE Compensation or DMM Rank Compensation, or both) upon notice to Service Provider (such notice may be made by email or fax).

1. CE COMPENSATION

a. Service Provider's actual collection performance shall be measured for each calendar month according to collection effectiveness roll rate goal percentages for such month, as such goal percentages are set by Company from time to time, in its discretion upon notice to Service Provider (for each calendar month, a "CE Performance Goal Percentage").

b. To determine whether Service Provider has achieved its CE Performance Goal Percentage for any calendar month, Company shall calculate Service Provider's aggregate collection effectiveness (each, the "Actual CE Percentage" for the applicable calendar month). The Actual CE Percentage, for any calendar month, shall be a fraction, converted to a percentage, with (a) a numerator equal to the difference between the beginning dollars owed in respect of Delinquent Accounts maintained with Service Provider during that calendar month and the ending dollars owed in respect of Delinquent Accounts maintained with Service Provider during such calendar month, and (b) a denominator equal to the beginning dollars owed in respect of Delinquent Accounts maintained with Service Provider during that calendar month. If the Actual CE Percentage for any calendar month exceeds the CE Performance Goal Percentage for such calendar month, Company shall pay to Service Provider for each FTE the amounts as specified in the attached worksheet, which may be amended from time-to-time by Company (such amounts, "CE Compensation").

2. DMMRANK COMPENSATION

a. Definitions.

1) DMM Percentage. The DMM Percentage ("DMMP") for any calendar month for a designated segment shall be the sum of the Weighted Roll Back Rate and the Weighted Cure Rate.

2) Weighted Roll Back Rate ("WRBR"). WRBR shall be a the product of (a) the fraction, converted to a percentage, with (i) a numerator equal to the sum of the ending dollars of Rolled Back (paid down) in respect of Delinquent Accounts maintained with Service Provider during such calendar month for a designated segment and (ii) a denominator equal to the beginning dollars billed in respect of Delinquent Accounts maintained with Service Provider during the prior calendar month for a designated segment, and (b) 0.40.

3) Weighted Cure Rate ("WCR"). WCR shall be a the product of (a) the fraction, converted to a percentage, with (i) a numerator equal to the sum of the ending dollars of Cured (paid current) in respect of Delinquent Accounts maintained with Service Provider during such calendar month for a designated segment and (ii) a denominator equal to the beginning dollars billed in respect of Delinquent Accounts maintained with Service Provider during the prior calendar month for a designated segment, and (b) 0.60.

4) Target Bonus. The Target Bonus is the per FTE bonus amount set by Company for a particular segment of Accounts placed with agencies. Company may designate different Target Bonus amounts for different segments. Company, in its sole discretion, may change such Target Bonus or segment definitions upon which such Target Bonus shall be applied at any time without consent of Service Provider. Company shall provide notice of such change to Service Provider in the calendar month immediately preceding the month in which such revised Target Bonus is used in calculation of DMM Rank Compensation.

b. DMM Rank and Bonus Compensation. A bonus per FTE shall be paid to the agency, based upon the calculations herein and the Placement Segments designated by Company. Service Provider's actual collection performance, by portfolio due segment, shall be compared each calendar month to the performance of the members of each tier group in respect of Accounts referred to Service Provider during such calendar month.

1) One Agency. If at any point in a calendar month, one agency holds 100% of a segment of Accounts, there shall be no DMM Rank Compensation opportunity for such Placement Segment.

2) Two Agency DMM Bonus Calculation. If at any point in a calendar month, two agencies hold 100% of a segment of Accounts, the DMM Rank Compensation for each agency shall be calculated by the product of (a) the fraction, converted to a percentage, with (i) a numerator equal to the DMMP for such Service Provider (ii) a denominator equal to the sum of the DMMP of both agencies, and (b) the applicable Target Bonus.

3) Three or More Agency DMM Bonus Calculation. If for the entire calendar month, three or more agencies hold 100% of a segment of the volume of Delinquent Accounts, the agencies with the two largest DMMP shall be entitled to DMM Rank Compensation for such segment. The DMM Rank Compensation for each agency shall be calculated by the product of (a) the fraction, converted to a percentage, with (i) a numerator equal to the DMMP for such Service Provider (ii) a denominator equal to the sum of the DMMP of all Service Providers entitled to the DMM Rank Compensation, and (b) the applicable Target Bonus.

**EXHIBIT-B**

## Settlements

**Last Reviewed: 29 Aug**

| | |
|---|---|
| **Document ID** | RC/COLL - AGCY710 |
| **Purpose:** | To verify the cardholder qualifies for a Settlement and execute process |

**Notes:**

- Settlements are not to be offered to anyone other than the customer listed on the account or power attorney
- Settlements should not be offered to a spouse not listed on the account
- **DO NOT** offer or accept Settlements on Dillards, Dillards Amex, Meijer, or Meijer MasterCard Accou

| # | Action |
|---|---|
| 1 | **If the customer is calling back within 30 days of a prior conversation about a settlement:**<br>• Educate the cardholder about their total amount due<br>• Verify that the customer's situation has not changed since prior settlement discussion<br>• Ensure that the account still qualifies for the forbearance plan<br>• Transfer the call to the 2nd voice (2nd voice go to **Step 7**)<br>• Document the account with a **Permanent Memo:** *Customer's situation has not changed from XX/XX/XXXX date; transferred to 2nd Voice.*<br><br>**Note**: For reference, the XX/XX/XXXX date should match the date of the prior memo and be less than days ago.<br><br>If there are no notes supporting previous plan discussions or this is the first call about a plan go to **Ste** |
| 2 | When starting the conversation with the cardholder about the Settlement, educate the cardholder abou total amount due.<br><br>Collector must ask the following questions:<br><br>1. What is the reason that you might need some assistance today? (RPD)<br>  o Example: Medical Expenses; Job Loss (Must be a life changing event affecting financial s<br>2. Do you have a source of funds? (Type of Source of Funds)<br>  o Example: Paycheck; Savings<br><br>**Example Talk Off:** If we find we do have a program that might work for you; will you have a source c to make the required payments? You said you were still working part time – would your source of inco your paycheck? |
| 3 | Check CIS notes to determine if the cardholder is eligible for a Forbearance Plan (Settlement or CAP) ( to **Step 4**):<br>• If there are no notes in the last 14 days the account is not eligible (Do not transfer for enrollm<br>• If there is more than one note on the account, the collector must use the most current dated r determining eligibility<br>• If eligible for both settlement and CAP (i.e. 12mCAP15%, Settlement), you should offer the pl best fits the cardholders situation. If both are a fit to the cardholder's situation then offer the f forbearance plan shown in the CIS note. |

**Sample Notes:** Must see the following within 14 days of the conversation date in order for the cardho qualify

NM N115C 022414 0557 Settlement,12mCAP15%,PayMatch

4 **Customer Must Meet Certain Guidelines**

**PLCC and Dual Card Guidelines:**

- Check CIS Notes if account qualifies

**BRC Guidelines:**

- Due stage must be equal or greater than 4+ months
- Account has to be open at least 9 months
- There has been no purchases within the last 30 days
- There can be no other pending Settlements on the account
- Balance is less than $20,000

**Note:** Manager approval needed if balance is more than $10,000 for PLCC or $20,000 for BRC

5 **Further verify the following with the customer:**

- Address is verified and statement hold removed (if needed)

**Cut Off Days to Offer Settlements By**

| Client | Write off date | Settlement Offer By: |
|---|---|---|
| **Walmart Community** | 115 | 105 |
| **All Others** 205 (or greater) | 205 | 195 |
| **Early Charge Off** 145 (or greater) | 145 | 135 |

**Note**: For accounts close to write-off date: If the cardholder has received a settlement letter and has the cutoff date for offering a settlement, as listed in table above, the settlement can still be honored a payment is received by the current due date

6 **3 Due Accounts**

If the cardholder meets the requirements in the above steps read the following script:

"You may be eligible for one of our plans, before I transfer you to one of our Specialists who may be assist you with a plan, I need to let you know that if your account is not already closed, it will be permanently closed during the enrollment process. Do you still want me to transfer you?"

- IfYes: **Transfer to 2nd Voice**
- If **No: Continue with collection efforts**

| | |
|---|---|
| | **4+ Due Accounts**<br>• If the customer is eligible: **Transfer to 2nd Voice**<br>• Mandatory Documentation (PLAN Memo Type) for 1st Agent (should come from supplier systen interface that is capturing question responses):<br><br>DEPT: COLL//CALLER: PRIMARY//REASON: LOSS MITIGATION PLAN//STATUS: TRANSFERRED//DET/ FORECLOSURE/PAYCHECK//RESOLUTION:NA//SYS: ACT//CHANNEL: PHONE//AGENT: 123456789<br><br>**Note:** If agent does not get through all questions in the call flow, the above FDR documentation shoul completed and status would show NOT TRANSFERRED. Unanswered questions should be marked with response of NA.<br><br>**For Details of Forbearance Question Response Selections:** Click Here<br><br>**For all accounts if the cardholder is not eligible for a plan or refuses to be transferred:**<br>• Continue with collection efforts<br>• Document the call according to outcome (i.e. No **Promise**, Payment Promise etc)<br>• Follow up according to result of the call<br>• Close call |
| 7 | **2nd Voice Takes Over the Call** (Obtain relevant information from transferring agent)<br><br>**If this is the first discussion about a plan with the customer go to Step 8**<br><br>**If the customer is calling back within 30 days of previous plan discussions and all questions been documented:**<br>• Information given from the previous call must be confirmed. Questions do not have to be aske again.<br>• Document the account with a permanent memo: ***Customer's situation has not changed fı XX/XX/XXXX date; OUTCOME: Submitted***<br><br>**Note**: For reference, the XX/XX/XXXX date should match the date of the prior memo and be less than days ago. Go to **Step 9** |
| 8 | **2nd Voice Questions:**<br><br>Confirm information with the collector, ask the following questions and document the responses (**Step** |

| | |
|---|---|
| 1 | Let me confirm the reason you need assistance is ... (provided from transferring agent)<br><br>Determine appropriate forbearance plan based on reason past due, source of funds and any insight cardholder has provided to this point. |
| 2 | Would you say your situation has increased your expenses or reduced your income?<br><br>Based upon your current financial situation how much have your expenses increased? *(Or ho has your income decreased)*<br>*(0% - 24%; 25% - 49%; 50% - 74%; 75%+)* |

| | |
|---|---|
| | **Note:** Percentages meant as a guide; do not demand the customer give exact percentages.<br><br>**Talk-off:** Would you estimate you have had about a 50% decrease in income? |
| 3 | How long have you been in this situation?<br>• Less than or equal to 12 months<br>• Greater than 12 months |
| 4 | How long do you expect your situation to last?<br>• Less than or equal to 12 months<br>• Greater than 12 months |
| 5 | Your settlement amount will be $XX.XX, is this an amount you can afford? (Yes or No) |
| 6 | Do you have a source of funds to make the required payments to complete the program? (Y No) |

**Note: Settlement Pre-Approved Letters** – If the customer is referring to a letter offer, obtain requi information from the customer through the questions (above) and document. The percentage and doll amount quoted on the letter must be honored.

9 For settlement offers that we initiate with the customer, we must offer the lowest approved amount, b the table below.

For settlements where the customer calls us and **initiates** a settlement discussion and offers a specific without us negotiating, then it is ok to accept the offer as long as:

1. The customer is eligible for a settlement
2. There is not an active settlement letter to the customer for a lower amount
3. The amount being offered is not lower than the **guidelines** allow.

Once the cardholder agrees to the settlement:

Calculate the settlement amount using the table below.

**Example:** If the 3 due PLCC account balance is $500, calculate by multiplying 500 by 70% (500 x 70% x 0.7) the result is the amount the cardholder is responsible for.

| Due Stage | PLCC | Dual Card | Mervyns | BRC |
|---|---|---|---|---|
| 2 Due | N/A | N/A | 80% | N/A |
| 3 Due | 70% | 70% | 60% | N/A |
| 4 Due | 70% | 65% | 40% | 65% |
| 5 Due | 60% | 55% | 25% | 55% |
| 6 Due | 35% | 35% | 35% | 50% |
| 7 Due | 30% | 30% | 30% | 50% |
| Balance | $10K or Less | $10K or Less | $10K or Less | $20K or |

| | |
|---|---|
| | **Note:** Settlements are not to be offered to anyone other than the customer listed on the account (Sho be offered to spouse not listed) |
| 10 | **Advise the cardholder of the options in which they can pay the settled amount:** |

| Terms | 1 Party Settlement | 2 Part Settlement | 3 Part Settleme |
|---|---|---|---|
| **Method** | All Payment Methods | **First payment**<br>All Payment Methods<br><br>**Second Payment**<br>All Payment Methods | **First payment**<br>All Payment Methods<br><br>**Second payment**<br>All Payment Methods<br><br>**Third payment**<br>All Payment Methods |
| **Payment Time Frame** | Payment dated within 10 days of conversation (Date of conversation + 9) | **First payment** - dated within 10-days of conversation (Date of conversation + 9)<br><br>**Second payment -** Dated within 31 days of first payment (Date of first payment + 31) | **First payment** – Dat within 10-days of conversation (Date of conversation + 9)<br><br>**Second Payment –** I within 31 days of first payment (Date of firs payment + 31)<br><br>**Third payment** – Da within 31 days of seco payment (Date of sec payment + 31) |
| **Percentage of Payment** | 100% | **First Payment:** 50%<br><br>**Second Payment:** 50% | **First Payment**: 33%<br><br>**Second Payment**: 3<br><br>**Third Payment**: 34% |

**Note:** The cardholder can break up the installments as they are able, with the exception of the first pa as long as the total agreed amount is paid in full within the timeframe. If any payment is not received agreed upon date the account will be charged off within 30 days of the scheduled payment date.

**Best Practice:** The cardholder can change their arrangement for more than what was agreed or datec than what was agreed. The cardholder cannot change the arrangement for less than the amount than agreed or dated later than the date **promised**.

| | |
|---|---|
| 11 | **Read the following script to the cardholder:** |

| English |
|---|

| | "Once you accept, and I submit this settlement offer, you must make the agreed upon p amounts and scheduled payment dates or the settlement offer will be canceled and your balance will be reported as charged off to the credit bureau" |
|---|---|
| **Spanish** | "Una vez que acepte y envíe esta oferta de acuerdo, deberá pagar los montos acordados fechas programadas o se cancelará la oferta de acuerdo y se informará su saldo impago incobrable ante las agencias crediticias". |

**Before securing payments also read:**

| | |
|---|---|
| **English** | "Synchrony Bank reports balances forgiven in the amount of $600 or greater to the Inte Revenue Service. You may receive a 1099C (*Ten Ninety Nine – C*)" |
| **Spanish** | "Synchrony Bank informa saldos (balances) condonados en el monto de $600 o mayor a Servicio de Impuestos Internos. Usted puede recibir un 1099C." |

**Note:** If the cardholder has questions regarding the 1099C refer them to their tax advisor.

12 **Documentation:**

- Go to FDR
- Go to XMA to place note on the account (CMA if current account)
- Memo Type – PLAN

**Mandatory Documentation for the Settlement 2nd Voice** (should come from supplier system inter is capturing the settlement details):

DEPT: COLL//CALLER: PRIMARY//REASON: LOSS MITIGATION PLAN-SETTLEMENT//STATUS: SUBMITTED//DETAILS: FORECLOSURE/INCREASE IN EXPENSES:50%-74%/LESS THAN OR EQUAL TC MONTHS/LESS THAN OR EQUAL TO 12 MONTHS//AFFORD:YES/COMPLETE:YES//RESOLUTION: NA//S ACT//CHANNEL: PHONE//AGENT: 123456789

**Note:** If agent does not get through all questions in the call flow, the above FDR documentation shoul completed and status would show NOT ENROLLED. Unanswered questions should be marked with a res NA.

For Details of Forbearance Question Response Selections: Click Here

**Mandatory Documentation for the Settlement Arrangement** (should come from supplier system that is capturing Settlement details):

SETT | CUR BAL = 558.77 | OFFER AMT = 195.57 | PLAN OPT = 3 | PMT 1 DT = 03/15/2014 | PM AMT = 64.54 | PMT 2 DT = 04/15/2014 | PMT 2 AMT = 64.54 | PMT 3 DT = 05/16/2014 | PMT 3 = 66.49

**Note**: the "|" is located below the backspace key on the keyboard, shift + Back slash

| | |
|---|---|
| | **Mandatory Documentation for the Settlement SPG Automation** (should come from supplier syst interface that is capturing Settlement details):<br><br>SETT\|558.77\|195.57\|3\|03/15/14\|64.54\|04/15/14\|64.54\|05/16/14\|66.49<br><br>**Note:** Must use "\|" to separate information, use "/" on dates, show two decimals on every dollar amou automation needs this to be exact<br><br>**Additional Documentation:** Please add any additional relevant documentation regarding the cardhol situation and negotiation that would assist the next agent in understanding the reason for the enrollme |
| **13** | **Route the Account**<br><br>From the Home Position of the Account<br>• Type **NM<SPACE>CS**<br>• **<TAB>** to the **Misc 1** field **YPS**<br>• **<ENTER>** |
| **14** | **Document the next work date:**<br><br>From the Home Position of the Account<br>• Type **XW<SPACE>MMDD**<br>• MMDD should be the follow up date for the account<br>• Give the account a **2 day** follow up, **3** on Fridays<br>• **<ENTER>** |
| **15** | **Document the Arrangement:**<br><br>From the Home Position of the Account<br>• Type **XAA<SPACE>Action Entry MMDD** and amount (i.e. **XAA_HP0010001024** This would outbound call that called the home number and there was a **promise** to pay made on the acco $1000 on October 24th)<br>• **<ENTER>** |
| **16** | **Settlement Letter Confirming the Arrangement** and **Settlement Completion Letter** are both automatically mailed to the customer |

Revisions

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2014, I caused to be served the foregoing SUPPLEMENTAL DECLARATION OF MARC KELLER on the following party at the following address:

Jon N. Robbins, WSBA #28991
Weisberg & Meyers, LLC
3877 N. Deer Lake Rd.
Loon Lake, WA 99148
Telephone: (509) 232-1882
Facsimile: (877) 565-1327
E-Mail: jrobbins@attorneysforconsumers.com
E-Mail: ecf@attorneysforconsumers.com

Aaron Radbil, Esq., FLBA#47117
James L. Davidson, Esq., FLBA #723371
Greenwald Davidson, PLLC
5550 Glades Rd., Ste #500
Boca Raton, FL 33431-7277
Telephone: (561) 826-5477
Facsimile: (561) 961-5684
E-Mail: aradbil@mgjdlaw.com
E-Mail: jdavison@mgjdlaw.com

Matthew J. Cunanan, Esq., WSBA #42530
DC Law Group NW LLC
101 Warren Avenue North
Seattle, WA 98109
Telephone: (206) 494-0400
Facsimile: (855) 494-0400
E-Mail: matthew@dclgawyers.com

Stephen M. Rummage, Esq., WSBA #11168
Bradley L. Fisher, Esq., WSBA #19895
Davis Wright Tremaine (SEA)
1201 Third Avenue, Suite 2220
Seattle, WA 98101-3045
E-Mail: steverummage@dwt.com
E-Mail: bradfisher@dwt.com

by:

- ☐ U.S. Postal Service, ordinary first class mail
- ☐ U.S. Postal Service, certified or registered mail, return receipt requested
- ☐ hand delivery
- ☐ facsimile
- ☒ electronic service
- ☐ other (specify) ECF

/s/ Bert W. Markovich
Bert W. Markovich, WSBA No. 13580

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
U.S. Bank Centre
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone 206-622-1711